IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TIERONE BANK, a United States Corporation, | ) ) ) | |
| Plaintiff, | ) ) | 4:06CV3135 |
| v. | ) ) ) | **MEMORANDUM AND ORDER** |
| U.S. MONEY SOURCE, INC., d/b/a SolunaFirst, a Georgia Corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court after a bench trial on August 14, 2007.  Pursuant to Fed. R. Civ. P. 52, the following are the court's findings of fact and conclusions of law. This is an action for breach of a warehouse line of credit (LOC) agreement between plaintiff TierOne Bank (TierOne) and defendant U.S. Money Source, Inc. (USMS).  In addition, TierOne also brings claims for negligence and negligent misrepresentation against USMS arising out of the same facts.

**FINDINGS OF FACT**

The parties have agreed the following may be accepted as established facts for the purposes of this trial only.  TierOne is a United States corporation with its principal place of business located in Lincoln, Lancaster County, Nebraska.  (Pretrial Order (PO), ¶ 1). USMS is a Georgia corporation with its principal place of business in Atlanta, Georgia. (PO, ¶ 2).  USMS is engaged in the business of the origination and sale of mortgage loans.  Id.

This matter involves the LOC between TierOne and USMS which was revised and modified on April 25, 2005 (PO, ¶ 3).  LOCs are used as a tool for banks such as TierOne to provide interim short term financing to mortgage originators such as USMS.  (Trial Transcript (TT) 6:22-7:3).  Under the parties' LOC, TierOne extended a ten million dollar line of credit to USMS. (PO, ¶ 3).  USMS could draw on the LOC by submitting "Funding

Requests for Advances." (TT 8:12-21). Under this arrangement, USMS would locate potential purchasers of residential real estate. (Plaintiff's Proposed Findings of Fact, ¶ 3). USMS would loan the buyers the funds necessary to purchase the real estate and would take back a mortgage or deed of trust on the real estate to secure the loan. (Ex. 1, LOC § 3(a)). USMS would draw upon the TierOne LOC to obtain the funds loaned to the purchaser necessary to close on the loan. (LOC § 3(a)). USMS would then assign the mortgage or deed of trust to TierOne to ensure repayment. (LOC § 6(b)). Thereafter, USMS would sell the mortgage or deed of trust to an investor on the secondary market and would use the proceeds from this sale to repay the advance from TierOne under the LOC along with any applicable interest charges. (LOC § 3(e)). Each advance was to be repaid, either within thirty days of the date of the advance or upon the closing of the home loan, whichever occurred first. (LOC § 3(e)). TierOne reserved the right, at its sole discretion, to refuse to advance funds in response to a funding request. (LOC § 3(j)).

As a condition precedent to an advance, USMS made certain representations and covenants to TierOne, including (1) all representations and warranties contained in any funding request were true and correct as of the date of the advance; (2) each loan would be secured by a valid and enforceable first lien on the real estate for which the advance was made; and (3) at the time of the advance USMS would be the holder of an eligible note, as defined in the LOC, which would be delivered to an investor within five days. (LOC §§ 8-9). The eligible note would not be subject to any other security interests and would be a valid and enforceable obligation. (LOC § 9(j)). The LOC also contained a broad indemnification clause under which USMS would indemnify TierOne. (LOC § 9(b)).

In order to access the LOC, USMS submitted a funding request via facsimile. (TT 8:16-21). The funding request would include a cover sheet listing the name of the borrower (the purchaser of the residential property); the name of the investor purchasing the loan; the date the funds were to be advanced; wiring instructions for the funds; information from the title insurance policy, including the name of the borrower, the amount of the title insurance, the legal address of the property, and the obligations the mortgage

-2-

originator (USMS) must meet to obtain clear title to the property securing the loan.  (TT 8:12-9:17).

Sometimes an insured closing letter would also be a part of the funding request. An insured closing letter is a letter from the title insurance company providing coverage to the agent closing the loan for any fraudulent activities.  (TT 10:14-11:2).  TierOne relies upon insured closing letters that are provided as a part of a funding request. (TT 11:3-6). TierOne required an insured closing letter when TierOne had not previously worked with a particular closing agent.  If an insured closing letter was in place, TierOne would accept a designated closing agent even if it had not previously worked with the particular agent. (TT 21:7-22).

**Green Loan**

On or about February 24, 2006, USMS submitted a Funding Request for Wire Transfer to TierOne for a loan in the amount of $391,950 related to real estate located at 853 Iron Corner Court, Odenton, Maryland 21113 (Green Loan).  (PO, ¶ 18).  TierOne responded by advancing the full amount requested of $391,950 pursuant to the Green Loan funding request.  Id.  This request identified Royalty Title Group as the closing company. (PO, ¶ 19).  Royalty Title Group is not licensed and was not licensed as a closing company or closing agent at the time of the funding request.  (PO, ¶ 20).  The Green Loan funding request also contained an insured closing letter purportedly issued by Stewart Title Guaranty Company and signed by  "Charles Shylock a Maryland Licensed Attorney."  (PO, ¶ 21).  The Green Loan funding request also contained a title commitment policy, which was also purportedly issued by Stewart Title Guaranty Company and signed by "Charles Shylock a Maryland Licensed Attorney."  (PO, ¶ 22).  Neither the insured closing letter nor the commitment for title policy were in fact issued by Stewart Title Guaranty Company and are not genuine documents.  (PO, ¶ 23).  Further, Charles Shylock is not and was not an employee or agent of Stewart Title Guaranty Company and had no authority to issue an insured closing letter or commitment for the title policy on behalf of Stewart Title Guaranty Company.  (PO, ¶ 24).

-3-

There is no evidence the advance made by TierOne to USMS for the Green Loan is secured by a valid and fully enforceable first lien on the real estate. (PO, ¶ 25). USMS does not dispute this loan is not marketable and cannot be sold on the secondary market. (PO, ¶ 26).

USMS discovered the fraud associated with this loan no later than March 16, 2006, but did not notify TierOne of the fraud until April 25, 2006. (TT 123:1-4, 23:10-24:14).

**DePaolo Loan 1**

After USMS knew of the fraud associated with the Green Loan, but before USMS made TierOne aware of the Green Loan fraud, USMS submitted a Funding Request for Wire Transfer to TierOne for a loan in the amount of $747,500 related to real estate located at 3438 Cascadia Avenue, Seattle, Washington 98144 (DePaolo Loan 1). (PO, ¶ 4). This request was submitted on April 5, 2006. Id. TierOne responded by advancing the full amount requested of $747,500 pursuant to the DePaolo Loan 1 funding request. Id. This request included an insured closing letter purportedly issued by The Commercial Title and Escrow Company, Inc. (Commercial Title) and signed by Harry Skeins, Jr. as its attorney. (PO, ¶ 5). Commercial Title is not licensed and was not licensed at the time of the funding request to issue insured closing letters. Id. The DePaolo Loan 1 funding request also contained a title commitment policy that was purportedly issued by Commercial Title, which also was not and is not licensed to issue title commitment policies. (PO, ¶ 6).

This DePaolo Loan 1 funding request contained a uniform residential appraisal report purportedly issued by Scott C. Oakes (Oakes) of Benjamin & Associates. (PO, ¶ 7). Oakes did not prepare or sign the uniform residential appraisal report that accompanied the DePaolo Loan 1 funding request. (PO, ¶ 8). The purported signature of Oakes on the uniform residential appraisal report was a forgery. Id.

-4-

There is no evidence the advance made by TierOne to USMS for the DePaolo Loan 1 is secured by a valid and fully enforceable first lien on the real estate. (PO, ¶ 9). USMS does not dispute that this loan is not marketable and cannot be sold on the secondary market. (PO, ¶ 10).

## DePaolo Loan 2

On or about April 5, 2006, USMS submitted a Funding Request for Wire Transfer to TierOne for a loan in the amount of $812,500 related to real estate located at 8296 Mercer Island, Washington 98040 (DePaolo Loan 2). (PO, ¶ 11). TierOne responded by advancing the full amount requested of $812,500 pursuant to the DePaolo Loan 2 funding request. Id. Similar to DePaolo Loan 1, this request included an insured closing letter purportedly issued by Commercial Title and signed by Harry Skeins, Jr. as its attorney along with a title commitment policy that was also purportedly issued by Commercial Title. (PO, ¶¶ 12-13). Like DePaolo Loan 1, this funding request for DePaolo Loan 2 contained a uniform residential appraisal report purportedly issued by Oakes of Benjamin & Associates, which was not prepared or signed by Oakes. The purported signature of Oakes on the uniform residential appraisal report for DePaolo Loan 2 was a forgery. (PO, ¶¶ 14-15).

There is no evidence the advance made by TierOne to USMS for the DePaolo Loan 2 is secured by a valid and fully enforceable first lien on the real estate. (PO, ¶ 16). USMS does not dispute that this loan is not marketable and cannot be sold on the secondary market. (PO, ¶ 17).

The court notes in its review of the established and agreed to facts as well as its evaluation of the trial testimony, no evidence of bad faith exists regarding either TierOne or USMS.

## CONCLUSIONS OF LAW

This court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.

**Breach of Contract**

This is an action for damages, in part, for breach of a contract. The contract specifies the agreement is governed by Nebraska law. (Ex. 1, § 12(f)). Under Nebraska law, a party seeking recovery for breach of contract must prove: the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the opposing party's duty. See Henriksen v. Gleason, 643 N.W.2d 652, 658 (Neb. 2002). The party must further prove its damages were proximately caused by the breach. Union Ins. Co. v. Land and Sky, Inc., 568 N.W.2d 908, 911 (Neb. 1997).

Construction of a contract is generally a question of law. Chadd v. Midwest Franchise Corp., 412 N.W.2d 453, 457 (Neb. 1987). "[A] contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms." Boutilier v. Lincoln Benefit Life Ins. Co., 681 N.W.2d 746, 750 (Neb. 2004). In construing a contract, words are given their plain and ordinary meaning as a reasonable person would understand them. See Kreikemeier v. McIntosh, 391 N.W.2d 563, 566 (Neb. 1986).

It is undisputed the parties entered into the LOC agreement. In the parties' contract, USMS agreed (1) all representations and warranties contained in any funding request were true and correct as of the date of the advance; (2) each loan would be secured by a valid and enforceable first lien on the real estate for which the advance was made; and (3) at the time of the advance USMS would be the holder of an eligible note, as defined in the LOC, which would be delivered to an investor within five days. (LOC §§ 8-9). The court finds USMS breached the contract because (1) USMS submitted funding requests to TierOne with representations and covenants containing false and inaccurate information; (2) USMS failed to ensure TierOne had a valid first lien on the real estate for which the loans at issue were made; and (3) USMS failed to supply eligible notes and sell the loans

-6-

to third-party investors to repay the TierOne loans within thirty days as promised.  Further, USMS has not asserted TierOne failed to comply with any conditions precedent.  As such, the court finds USMS breached the LOC agreement with TierOne if TierOne can demonstrate it has been damaged by the breach.

TierOne submitted evidence the outstanding principal, interest, and fees on the three loans total $1,574,069.44.[1]   In addition, TierOne incurred $51,561.27 in costs associated with locating assets and applying proceeds from the sale of these assets to reduce the total loss. USMS has not challenged TierOne's proof of damages.  Therefore, TierOne established its prima facie case for breach of contract with recoverable damages totaling $1,625,630.71.

USMS asserts its breach is excused because TierOne materially breached the LOC agreement by its failure to fulfill its obligation to approve the closing agent.  The court disagrees.[2]  The parties' contract gave TierOne the right to approve the closing agent, but not the obligation to verify and approve the closing agent.  (LOC § 3(*l*)).  The evidence reflects that from the time USMS made a funding request to the time the funds were needed was often a matter of a few hours or a single day.  TierOne's practice required a settlement agent to be an agent with whom TierOne had previously worked, or, lacking previous experience with the agent, TierOne demanded an insured closing letter be provided on behalf of the settlement agent.  In all three of the loans at issue, TierOne was either provided with an insured closing letter or had previously worked with the settlement agent.  Under the circumstances and the parties' practices, TierOne did take reasonable

---

[1]The cumulative original principal of the three loans totals $1,951,950.00.  TierOne's collection efforts resulted in recovery of $556,294.90, leaving a principal balance of $1,395,655.10.  As of August 10, 2007, accrued interest totaled $177,754.34 and accrued fees totaled $660.00.  (Ex. 8).

[2]Even if the court found TierOne breached the contract by failing to approve settlement agents, this failure would only apply to the Green Loan because the closing agent on the two DePaolo Loans was Smith Brown Sterling, who was licensed to do real estate closings in Washington.

precautions in approving a settlement agent.  Given the urgency of USMS's funding requests and given the abbreviated time in which TierOne needed to respond by wiring the funds, if TierOne had some contractual obligation to verify and approve the settlement agent, the court finds any failure by TierOne to approve a settlement agent did not constitute a material breach of the LOC agreement under the circumstances and the parties' practices.

All three loans appeared typical and not unusual.  TierOne reasonably relied upon information supplied by USMS with USMS's contractual representations and covenants. Thus, the court finds USMS breached the parties' contract resulting in damages to TierOne totaling $1,625,630.71 and TierOne did not materially breach the LOC agreement so as to excuse USMS's breach.

**Negligent Representation**

TierOne asserts USMS is also liable under Nebraska law on the grounds of negligent misrepresentation.[3]  The Nebraska Supreme Court has stated "that liability for negligent misrepresentation is based upon the failure of the actor to exercise reasonable care or competence in supplying correct information." Hobbs v. Midwest Ins., 570 N.W.2d 525, 529 (Neb. 1997).

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

---

[3]Neither party has raised, and the court's independent investigation has not revealed, any bar under Nebraska law to bringing a tort cause of action arising out of the same facts upon which the action for breach of contract rests.

-8-

Id. (quoting Restatement (Second) of Torts § 552).  One may be liable for negligent misrepresentation, even though acting honestly and in good faith, if one fails to exercise the requisite level of care under the circumstances.  Outlook Windows P'ship v. York Int'l Corp., 112 F. Supp. 2d 877, 896 n.34 (D. Neb. 2000).  Therefore, for TierOne to recover, it must show (1) USMS supplied TierOne with false information upon which TierOne reasonably relied, and (2) USMS failed to exercise reasonable care or competence in communicating or failing to communicate information to TierOne.

TierOne asserts USMS supplied TierOne with false information when USMS represented (1) the loans to DePaolo and Green were secured by valid first liens on the real estate; (2) the transactions would be sold to third-party investors; and (3) the loans would be repaid within thirty days.  These affirmative statements of fact were false.

"A person is justified in relying upon a representation made to him as a positive statement of fact, when an investigation would be required to ascertain its falsity."  Foiles v.Midwest St. Rod Ass'n of Omaha, Inc., 578 N.W.2d 418, 422 (Neb. 1998).  Here, TierOne could not have ascertained the falsity of these representations without an investigation.  As such, TierOne was justified in relying upon the accuracy and truthfulness of these statements.

The final remaining issue is whether or not USMS exercised reasonable care or competence in supplying this information to TierOne.  This is a closer question under the circumstances here.  These three loans were pre-packaged for USMS by third-parties.

The record does not reflect any investigation or audits conducted by USMS to verify the information USMS then represented and warranted to TierOne as true. USMS asserts it did not conduct these investigations because in fifteen years USMS had never seen a need to do so. While this may rationalize the failure as to the Green Loan, it does not excuse the failure with regard to the DePaolo Loans which occurred after USMS was aware of the fraud involved with the Green Loan. As such, USMS's actions were not reasonable as to the DePaolo Loans.

As to the Green Loan, this is the closest question. Nebraska has adopted the Restatement (Second) of Torts § 522. See Gibb v. Citicorp Mortgage, Inc., 518 N.W.2d 910, 922 (Neb. 1994). In the commentary to § 552, the Restatement states:

> When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it. Thus the recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal business or professional competence to form an intelligent judgment upon the data obtained.

Restatement (Second) of Torts § 552, cmt. e.

The fact whether or not the loan was secured by a valid first lien was not known to TierOne. As such, TierOne was entitled to expect USMS would exercise the care and competence that mortgage lending required to ascertain lien status. Where USMS did not act to assure TierOne's position was secured by a valid first lien, USMS failed to exercise the requisite skill and care.

-10-

4:06-cv-03135-WJR-DLP   Doc # 48   Filed: 10/03/07   Page 11 of 13 - Page ID # 220

USMS is also liable to TierOne on the basis of negligent misrepresentation. The court finds USMS did negligently misrepresent material facts to TierOne resulting in damages to TierOne totaling $1,625,630.71.

**Common Law Negligence**

Finally, TierOne asserts USMS is also liable on the ground of common law negligence. To prevail on this ground, TierOne must establish (1) USMS had a duty to protect TierOne from injury; (2) USMS failed to discharge this duty; and (3) TierOne incurred damage that was proximately caused by USMS's failure to discharge its duty. See Nat'l Am. Ins. Co. v. Constructors Bonding Co., 719 N.W.2d 297, 302, (Neb. 2006) (citing Washington v. Qwest Commc'n Corp., 704 N.W.2d 542, 549 (Neb. 2005). USMS admits it had a general duty to use due care in performing its business of originating and selling mortgage loans, as well as a general duty not to make false or misleading statements that induced TierOne to loan USMS funds. At issue is whether the failure to secure valid first liens on the real estate in the DePaolo and Green Loans while representing USMS in fact secured valid first liens constituted a breach of USMS's duty owed to Tier One. For the reasons previously stated in more detail, including the closeness of the reasonable care and competence issue, the court finds this failure constitutes a breach of USMS's duty of care, and TierOne's resulting monetary losses are damages proximately caused by this breach.

USMS asserts TierOne was contributorily negligent in TierOne's failure to investigate adequately the closing agents used for these loans. As the court previously

-11-

held, TierOne's actions under the quick response circumstances and practices here did not violate the contractual terms and do not constitute contributory negligence.

The court finds USMS was negligent and USMS's negligence resulted in damages to TierOne totaling $1,625,630.71.

The court's findings are based, in part, on the testimony of the parties' principal witnesses, Ruth Breinig for TierOne and Robin Kendrick for USMS.  The court finds each witness is knowledgeable and credible as to these transactions and the practices of their respective employers.  The court particularly finds the testimony of Ms. Breinig helpful in explaining the business circumstances and practices applicable to the parties' contract and the events of this case.  USMS explained it was under the mistaken belief and reliance that TierOne was approving the agents.  As indicated above, TierOne had the contractual right, but not the obligation, to approve USMS's choice of the closing agent.  (LOC § 3(*l*)).  Since the Green and DePaolo fraudulent loan transactions, USMS no longer accepts a third party selected title binder or title commitment.  USMS now chooses the title agent or escrow agent, that is, the closing agent, except in the few states where USMS is prohibited from doing so, and USMS limits that choice to well-known national companies.  The evidence indicates USMS was in a better position to prevent this fraud by the careful selection and verification of the closing agent or title insurance agent.

IT IS ORDERED, pursuant to this Memorandum and Order, TierOne is hereby awarded damages for breach of contract, negligent misrepresentation, and common law

negligence in the amount of $1,625,630.71.  A separate order of judgment will be entered this date.

DATED this 3rd day of October, 2007.

BY THE COURT:

/s/ William Jay Riley

_____

WILLIAM JAY RILEY, Circuit Judge
Sitting by Designation